IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
WESTERN DIVISION

IN RE:

FRANKLIN TRANSPORTATION, INC.,            BK 03-71309-CMS-7

    DEBTOR.

                                                       AP 05-70014-CMS

ROBERT A. MORGAN, as TRUSTEE,

    PLAINTIFF,

vs.

BANK OF MOUNDVILLE,

    DEFENDANT.

## MEMORANDUM OF DECISION

This action was set for hearing on a motion for summary judgment by The Bank of Moundville (Bank)(AP Doc. 25) and on the trustee's cross-motion for summary judgment (AP Doc. 32). The court will treat the trustee's cross-motion as a response in objection to the Bank's motion for summary judgment**.** The court has reviewed the facts in the context of applicable law and finds that the Bank's motion is due to be **DENIED**, in part; and **GRANTED**, in part. The trustee's objection is due to be **SUSTAINED**, in part; and **OVERRULED,** in part.

## FINDINGS OF FACT

Chapter 7 Trustee Robert A. Morgan's original complaint in this adversary proceeding alleged that the Bank received preferential transfers under 11 U.S.C. § 547 and fraudulent transfers under 11 U.S.C. § 548. The lawsuit asked the court to set aside and award to the estate a total of $36,514.90 in payments made in the 90 days prior to the debtor's April 24, 2003 Chapter 11 filing.

1

Exhibit F1 to the trustee's brief (AP Doc. 33) later itemized alleged preferential transfers totaling $41,330.66, an amount greater than the amount listed in the complaint. The corporate case was converted to a Chapter 7 liquidation on July 10, 2003. (BK 03-71309, Doc. 29), and Morgan was appointed trustee that same day. (BK Doc. 31)

On July 7, 2003, corporate officers Gary C. Franklin and Emilie J. Franklin had also filed an individual Chapter 7 case.(BK 03-72116) Morgan was also appointed trustee in that case. The individual debtors were discharged on October 16, 2003 (BK Doc. 17), and Morgan filed his report of no distribution in a "no asset" case on April 18, 2006 (BK Doc. 19). The case has not been closed yet, but it has little relevance to this separate dispute between a corporate creditor and Morgan in his role as trustee for all corporate creditors in BK 03-71309.

The facts, as alleged in the Bank's motion for summary judgment and the trustee's cross-motion/response do not appear to be in dispute.

Debtor Franklin Transportation, Inc. had entered into three loan agreements with the Bank prior to the filing of its bankruptcy petition. The first loan was for $1.1 million (loan number 996513). It was entered into on March 5, 2002, and stated that it is secured by a real estate mortgage recorded September 5, 2001; and by personal guarantees. (Exhibit A2 to trustee's brief in support of cross-motion for summary judgment, AP Doc. 33). It is undisputed that the real estate securing the loan was owned solely by corporate officers Gary C. Franklin and Emilie J. Franklin, as individuals. Loan number 996513 in trustee's Exhibit A2 showed that it was a renewal of a prior note number 988839, with a maturity date of March 5, 2017. This note provided for monthly payments of $9,138.30 subject to adjustment based upon the variable interest rate provided for in the loan.

2

A second note in the amount of $50,000.00 is identified as loan number 1007823 dated March 13, 2003 with a maturity date of September 9, 2003. This loan in the amount of $50,000.00 was a renewal of a prior loan 1001965. (Exhibit A12 to trustee's brief in support of cross-motion for summary judgment) This was a single installment note with payment in the amount of $51,726.03 being due August 9, 2003. This loan also was secured by a mortgage on the same real estate owned by Gary and Emilie Franklin.

A third loan in the amount of $50,000.00 was designated as loan number 997084 and was entered into March 27, 2002 with a March 27, 2017 maturity date (Exhibit A17 to trustee's brief in support of cross-motion for summary judgment). This note provided for monthly payments of $415.38 subject to adjustment for the variable rate of interest provided for in the loan. This loan was also secured by Gary and Emilie Franklin's real estate.

There was no dispute that the real estate made the subject of the above described mortgages was owned by the Franklins individually. And there was no dispute that the mortgages were duly recorded.

Morgan filed this adversary proceeding against the Bank of Moundville on April 21, 2005. The Bank filed its **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** (AP Doc. 25) on April 21, 2006. The trustee filed his <u>CROSS MOTION FOR SUMMARY JUDGMENT</u> (AP Doc. 32) and **<u>BRIEF IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT</u>** (AP Doc. 33) on May 22, 2006.

The parties appeared at a hearing on the Bank's motion for summary judgment and the trustee's opposition June 15, 2006. The parties agreed that the court should take the issues under submission based on the record at the close of the hearing.

3

# CONCLUSIONS OF LAW

The court has jurisdiction of debtor Franklin Transportation, Inc.'s main bankruptcy case pursuant to 28 U.S.C. § 1334(a). The court has jurisdiction of the trustee's lawsuit, a core bankruptcy proceeding under 11 U.S.C. § 157(b)(2)(F), pursuant to 28 U.S.C. § 1334(b). Jurisdiction is referred to this Bankruptcy Court by the General Order of Reference of the United States District Courts for the Northern District of Alabama, signed July 16, 1984, As Amended July 17, 1984.

Summary judgment motions are governed by Fed. R. Civ. P. 56, as applied in Bankruptcy Court by Fed. R. Bankr. P. 7056. Summary judgment is proper under Rule 56( c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

As the Supreme Court of the United States stated in Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986):

> In our view, the plain language of Rule 56( c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Further, as stated in Ajaka v. BrooksAmerica Mortgage Corporation, 2006 WL 1765425, *2, n. 6 (11th Cir. 2006):

> Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and "when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version." Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir. 2005).

Since this is the Bank's motion for summary judgment, the court will construe all facts in the light

4

most favorable to the non-moving trustee's position.

I.

**The bank has failed to show conclusively that it has a defense preventing the trustee from avoiding alleged preferential payments under 11 U.S.C § 547(b)**.

11 U.S.C. § 547(b) sets out the elements a trustee must show to prove that a prepetition transaction comprised an avoidable preference. The Bank, in its motion for summary judgment, asserted that the trustee could not show all these elements in the challenged payments it received from the debtor. The Bank also contended that it had Section 547(c) defenses to protect the payments from avoidance. It sought summary judgment in its favor on these bases.

Section 547(b) provides the following:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made –
        (A) on or within 90 days before the date of the filing of the petition; or
        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;
 and
    (5) that enables such creditor to receive more than such creditor would receive if –
        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had not been made; and
        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

A review of each of the sections individually in the context of this record shows the following:

- **"Any transfer of an interest of the debtor in property"**: There is no fact dispute that there was a transfer. The debtor paid the Bank of Moundville with checks from accounts in the

Case 05-70014-CMS    Doc 47    Filed 07/19/06    Entered 07/19/06 14:48:42    Desc Main
Document    Page 5 of 12

name of the debtor, transfers of an interest of the debtor in property.

- **"To or for the benefit of a creditor"**: There is no dispute that the Bank was a creditor and benefitted from the receipt of Franklin Transportation, Inc.'s payments.

- **"For or on account of an antecedent debt owed by the debtor before such transfer was made"**: There is no dispute that the debts owed to the Bank by the debtor preceded the date of payments.

- **"Made while the debtor was insolvent"**: Section 547(f) provides that "for the purposes of this section, the debtor is presumed to have been insolvent on and <u>during the ninety days immediately preceding the date of the filing of the petition</u>. (emphasis added)" The alleged preferential transfers occurred within 90 days of the filing of the petition and the Bank has shown nothing indicating that the debtor was not insolvent.

- **"Made (A) on or within 90 days before the date of the filing of the petition..."**: All transfers were within 90 days of the filing of the bankruptcy petition.

- **"... That enables such creditor to receive more than such creditor would receive ..."** in a Chapter 7 distribution if the payments had not been made**:**

This element, Section 547(b)(5) is the heart of this contested matter, and the most complicated part of the preference determination. Although the material facts are not in dispute, the parties have argued opposite legal conclusions based on the same facts. In order to analyze under the Section 547(b)(5) "liquidation test", it is necessary to undo the prepetition transfers, meaning that checks paid to the Bank would hypothetically be returned to the debtor.

In that scenario, the indebtedness due to the Bank at the hypothetical Chapter 7 filing would be increased by $41,330.66 in alleged preferential payments (Exhibit F1 to trustee's brief in support of cross-motion for summary judgment) to a total of $1,200,133.15 from $1,158,802.49 (see Exhibit A1 to trustee's brief in support of cross-motion for summary judgment) At the time of filing of the hypothetical Chapter 7 petition, Franklin Transportation, Inc., would owe the Bank approximately $1.2 million, a debt secured by a mortgage on real estate not owned by Franklin Transportation, Inc.

6

In the chapter 7 context, the first question to be addressed is the status, or classification, of the bank's claim against Franklin Transportation, Inc. 11 U.S.C. § 506(a) sets out the extent to which a creditor's claim is secured – or unsecured – within the meaning of the Bankruptcy Code. Section 506(a) provides the following:

> **Section 506. Determination of secured status**
>
> (a) An allowed claim of a creditor <u>secured by a lien on property in which the estate has an interest</u>, or that is subject to setoff under section 553 of this title, <u>is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property</u>, or to the extent of the amount subject to setoff, as the case may be, and is an <u>unsecured claim to the extent that the value of such creditor's interest</u> or the amount so subject to setoff <u>is less than the amount of such allowed claim</u>. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. (emphasis added)

The undisputed facts in this case are that the real estate was <u>not</u> the property of Franklin Transportation, Inc., and that "the value of such creditor's interest in the estate's interest in such property" was zero. As is not uncommon in small business transactions, the corporation was liable for a loan secured by a consensual lien on property owned by others. Therefore, the Bank would be an unsecured creditor holding a $1.2 million unsecured claim against the corporation in a Chapter 7 case.

Whether or not the Bank could have received the full amount of its debt by the liquidation of the officers' individually owned property is not the issue in this particular lawsuit filed in this particular corporate debtor's case.

As stated in <u>Virginia-Carolina Financial Corporation v. Creative Financial Management, Incorporated</u> (<u>In re Virginia-Carolina Financial Corporation</u>), 954 F.2d 193, 199 (4th Cir. 1992), a similar fact situation:

7

> As the plain language of Section 547(b)(5) conveys, the court must focus, not on whether a creditor may have recovered all of the monies owed by the debtor from any source whatsoever, but instead upon whether the creditor would have received less than a 100% payout in a Chapter 7 liquidation.

See also Committee of Creditors Holding Unsecured Claims v. Koch Oil Company (In re Powerline Oil Company), 59 F.3d 969, 972 (9th Cir. 1995), cert. denied 516 U.S. 1140 (U.S. 1996).

The Bank therefore received $41,330.66 in 90-day payments, reducing what would have been a $1.2 million unsecured claim in the hypothetical Chapter 7, to an approximate $1.16 million unsecured claim. It would also be entitled to receive a pro rata share of the remaining balance of its unsecured claim in Chapter 7, along with Franklin Transportation, Inc.'s other unsecured creditors. Further, the $41,330.66 in payments to the bank within the 90 days prior Chapter 7 reduced the assets available to pay other creditors. "It is the ultimate aim of the preference law in the Bankruptcy Code to insure that all creditors receive an equal distribution from the available assets of the debtor."Gill v. Winn ( In Perma Pacific Properties), 983 F.2d 964, 968 (10th Cir. 1992). See also Southmark Corporation v. Grosz (In re Southmark Corporation), 49 F.3d 1111, 1117 (5th Cir. 1995).

Therefore, an analysis of the facts in the light most favorable to the trustee, has shown that the debtor Franklin Transportation, Inc., did make Section 547(b) preferential transfers to the Bank of Moundville within 90 days of the bankruptcy filing. The court clearly cannot grant summary judgment as a matter of law on the ground that the trustee has failed to show the elements of Section 547(b) preferential payments.

The Bank, in its motion for summary judgment, further asserted that, if the court found the payments were preferential under Section 547(b), the trustee still could not avoid the transfers because of defenses allowed a creditor under Sections 547(c)(1) and (2).

8

Section 547(c)(1) is commonly referred to as the "contemporaneous exchange for new value" exception. The Bank's submissions in support of its motion for summary judgment provide nothing indicating exactly what exchanges were made for exactly what new value to the <u>corporate</u> debtor. The creditor cannot be entitled to summary judgment on this defense.

Section 547(c)(2) is referred to as the "ordinary course of business defense". This bankruptcy case and adversary proceeding were filed prior to the 2005 amendments to the Bankruptcy Code and the applicable Section 547(c)(2) provides the following:

> (c) The trustee may not avoid under this section a transfer–
>     (2) to the extent that such transfer was –
>         (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>         (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>         (C) made according to ordinary business terms; ...

In support of the Section 547(c)(2) defense, the Bank submitted the affidavit of Sam Parks, an officer at First National Bank of Central Alabama. While the affidavit tracks the language of 547(c)(2), it is a mere conclusory statement without any factual basis in this record. The affidavit stated that the payments were on a debt incurred by the debtor in the course of ordinary business, but does not offer specifics on the type of debt it was, or how it related to the corporate debtor's business. The affidavit said that the payments were made in the ordinary course of business of the debtor, without stating what payments it refers to or what is ordinary for the debtor. It also asserted that the payments were made according to ordinary business terms, but does not state what those ordinary business terms consist of.

Therefore, interpreting this affidavit in a manner most favorable to the trustee upon this

9

motion for summary judgment, the bank has not met its burden that these transfers were in the ordinary course of business. The Bank is not due judgment as a matter of law under Section 547(c)(2).

Questions of material fact on both Section 547(c) defenses remain in issue, and the matter cannot be resolved by summary judgment on this record.

## II.

### The trustee cannot meet the threshold requirement to proceed under Section 548, and summary judgment is due to be granted as to this claim.

Trustee further asserted in his complaint that the transfers from the debtor to the Bank should be set aside as fraudulent transfers within the meaning of 11 U.S.C. § 548. The trustee's action is premised upon Section 548(a)(1)(B), referred to as the "constructive" fraudulent transfer section. Section 548(a)(1)(B) specifically provides that trustees may avoid transfers in which the debtor:

> (B)(i) <u>received less than a reasonably equivalent value in exchange for such transfer</u> or obligation (emphasis added); and
>   (ii)
>       (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>       (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
>       (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

No proof of specifically fraudulent intent is required for a trustee to avoid a transfer as "constructively" fraudulent if all elements of Section 548(a)(1)(B) do exist in the transaction. The trustee's basic assertion under Section 548 is that the debtor received less than a reasonably equivalent value in exchange for the transfers made to the Bank. A finding of "less than a reasonably

10

equivalent value" is the threshold requirement for the rest of the constructive fraud analysis.

Section 548(d)(2) defines value:

"value" means property, or <u>satisfaction</u> or securing <u>of a present or antecedent debt of the debtor</u>, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor; (emphasis added)

Trustee's Exhibits A2, A12, and A17 show that the debtor Franklin Transportation, Inc., was <u>itself</u> indebted to the Bank, along with its officers.  Therefore, Franklin Transportation, Inc., did receive value in the meaning of 548(d)(2).  To the extent that the debtor transferred its funds to the bank, it reduced its own unsecured debt to Bank of Moundville dollar-for-dollar.

The trustee cited the Eleventh Circuit Court of Appeals' <u>General Electric Credit Corporation of Tennessee v. Murphy</u> (<u>In re Rodriquez</u>), 895 F.2d 725 (11th Cir. 1990). In <u>General Electric Credit</u>, the debtor corporation had paid debts it was not liable on for a separate subsidiary corporation.  The Eleventh Circuit noted

Since Domino (the debtor) <u>was not liable for repayment of the International's indebtedness</u>, Domino could not be found to have benefitted directly from repaying the loan absent a piercing of International's corporate veil. ...

<u>General Electric Credit</u>, 895 F.2d at 727.

Unlike the <u>General Electric Credit</u> case, the corporate debtor in the Franklin case was liable on the debt, along with its corporate officers. To the extent Franklin Transportation, Inc. paid its own debt, it did receive a benefit - "reasonably equivalent value" – reduction of the unsecured balance for which the corporation was liable.  The fact that insiders may also have benefitted by the debtor's payments on its indebtedness does not mean that this corporate debtor received no value from the transfers.

This record conclusively shows that the trustee cannot meet the threshold requirement for the

11

court to find that the 90-day prepetition payments were in exchange for less than reasonably equivalent value. Consequently, the trustee's complaint on this issue cannot go forward, the record reflects all facts necessary to grant summary judgment in the bank's favor on the Section 548 allegation.

## CONCLUSION

The court finds that the Bank's motion for summary judgment is due to be **DENIED** as to the charge that the payments can be avoided under Section 547(b), there remaining a question of material fact not resolved by these pleadings. However, the Bank's motion for summary judgment is due to be **GRANTED** as to the Section 548 constructive fraud claim since the existing record shows the trustee cannot proceed. To the same extent, Morgan's objection is due to be **SUSTAINED** as to the Section 547(b) claim of the complaint; and **OVERRULED** as to the Section 548 allegation.

An order, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately.

**DONE and ORDERED** this July 19, 2006.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge

12